IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
|     CHARLES S. NENNER AND | | |
|     SARALY G. NENNER, | : | |
|         DEBTORS. | : | BANKRUPTCY NO. 09-16190-MDC |
| | : | |
| SOUTH PHILADELPHIA DONUTS, INC., | : | |
|     PLAINTIFF, | : | ADVERSARY NO. 10-00003-MDC |
| V. | : | |
| CHARLES S. NENNER, | : | |
|     DEFENDANT. | : | |

# **MEMORANDUM OPINION**

BY:  MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

**INTRODUCTION**

Before this Court for consideration is the Plaintiff, South Philadelphia Donuts, Inc.'s ("SPD") Motion for Summary Judgment on its objection to the Debtor, Charles S. Nenner's ("Nenner") discharge pursuant to 11 U.S.C. § 523(a)(4) for defalcation.  SPD and Nenner do not dispute the underlying facts and differ only on the legal standard the Court should apply for determining defalcation.  SPD contends that defalcation may arise from negligence or ignorance and does not require proof of dishonest conduct. Nenner asserts that as a matter of law more than simple negligence is required to prove defalcation.

The Court finds that it need not decide whether mere negligence in the performance of a fiduciary duty constitutes defalcation.  Here, the record demonstrates that the Debtor acted with more than mere negligence.  Nenner breached his fiduciary obligations owed to SPD and as a result the debts he owes to SPD are nondischargeable pursuant to 11 U.S.C. § 523(a)(4).  Accordingly, the Court will grant the Motion and Nenner's debt to SPD determined nondischargeable.

**FACTUAL/PROCEDURAL BACKGROUND**

Debtors Charles S. Nenner and Saraly G. Nenner (the "Debtors") commenced a chapter 7 bankruptcy case on August 19, 2009. On January 4, 2010, SPD filed a Complaint against Nenner initiating this adversary proceeding (the "Complaint"). In the Complaint, SPD requests a determination that certain debts owed by Nenner to SPD are nondischargeable under either 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6), or §523(a)(4). In response to the Complaint, Debtor Charles S. Nenner filed an Answer dated February 4, 2010 (the "Answer") [Docket No. 4].

On August 5, 2010, SPD filed a Motion for Summary Judgment [Docket No. 20] (the "Motion"). The Motion is limited to SPD's claim under § 523(a)(4) and does not address the other non-dischargeability claims raised by SPD pursuant to §§ 523(a)(2)(A) and 523(a)(6) that were alleged by SPD's Complaint. Nenner filed his response to the Motion on August 17, 2010 [Docket No. 23] (the "Response"). In the Response, Nenner disputed none of the facts alleged by SPD's Statement of Uncontested Facts ("Statement of Facts") [Docket No. 20-2].

The Statement of Facts established the following:

1. Nenner solely owned and operated an insurance agency, C.S. Nenner Insurance, from 1958 until approximately 2007. In connection with his insurance business, Nenner was licensed by the Commonwealth of Pennsylvania as an agent to sell property and casualty insurance, and held his license until he closed the agency in 2007. Statement of Facts, Paragraphs 1, 2.

2. In 2006, Nenner agreed to act as SPD's insurance broker and to procure on SPD's behalf liability, property and auto insurance. In August of 2006, Nenner executed an agreement on SPD's behalf with AMGRO, Inc. ("AMGRO"), a premium finance company, to finance the payment of a liability insurance policy from US Underwriters Insurance Company ("USUIC"). Statement of Facts, Paragraphs 4, 7.

3. Pursuant to this arrangement, Nenner would invoice SPD for SPD's monthly premium payments. Upon receipt of SPD's premium payments, Nenner deposited the payments into the C.S. Nenner Insurance Escrow account, in trust, for the purpose of purchasing the USUIC policy financed by

2

AMGRO. Nenner was to then remit the premium less his commission to AMGRO. At no time did SPD fail to make timely payment to Nenner. Statement of Facts, Paragraphs 12, 13, 21, 23.

4. At some point after the initiation of the USUIC policy, a fire occurred at Nenner's offices and Nenner hired new staff. As a result of the confusion caused by the fire and the new staff, Nenner negligently misapplied SPD's premium payments to a different account instead of forwarding them to AMGRO. Answer, Paragraph 2.

5. On November 10, 2006, Nenner received a notice from AMGRO of its intent to cancel the USUIC policy for non-payment of premium. Thereafter, Nenner cured the non-payment and AMGRO reinstated the USUIC policy. Statement of Facts, Paragraphs 14, 16.

6. However, Nenner failed to resume making payments to AMGRO on behalf of SPD. As a result, a little more than one month later on December 28, 2006, Nenner received a second notice from AMGRO of its intent to cancel the USUIC policy for non-payment of premium. In response to this notice, Nenner apparently took no action to cure the non-payment. The USUIC policy was canceled on January 10, 2007. Statement of Facts, Paragraphs 17, 18.

7. Despite receiving notice of the cancellation of the USUIC policy, Nenner continued to invoice SPD for its monthly premiums and SPD continued to make timely payment of each invoice. In addition, to continuing to bill SPD for the canceled policy, Nenner issued to SPD a certificate of liability insurance showing that the USUIC policy remained in force. Nenner issued the certificate of liability insurance on April 25, 2007, four months after the USUIC policy had been canceled for non-payment of premium. Statement of Facts, Paragraphs 20, 21, 22, 23, 24.

8. Sometime prior to June 19, 2008, SPD's franchisor Dunkin' Brands was sued in the Court of Common Pleas, Philadelphia County (the "Tort Action"). On September 26, 2008, the Tort Action was amended to add SPD as a defendant. Upon receiving notice of the Tort Action, SPD tendered the Tort Action to USUIC for defense and indemnification under the USUIC policy. USUIC denied the claim on grounds that the USUIC policy had been canceled. Had it remained in force, the USUIC policy would have required USUIC to provide defense and indemnification of the Tort Claim. Statement of

Facts, Paragraphs 27, 28, 29.

9. After learning of the cancelation of the USUIC policy, SPD commenced an action captioned *South Philadelphia Donuts, Inc. and Vincent J. Ponzio v. C. S. Nenner Insurance, Charles S. Nenner, United States Liability Insurance Company, Edward Hamm, and Dunkin' Brands, Inc.*, filed in the Court of Common Pleas, Philadelphia County, December Term 2008, No. 2310 (the "State Court Action"). Statement of Facts, Paragraph 32.

10. Nenner failed to respond to SPD's State Court Action and SPD obtained on August 14, 2009 a default judgment against Nenner in the amount of $125,067.59. Five days later, the Debtors filed the petition instituting this bankruptcy proceeding. Statement of Facts, Paragraphs 33, 34, 36.

On September 15, 2010, this Court held a hearing on the Motion. Thereafter, SPD filed a brief supplementing the arguments in its original brief. Nenner did not file a supplemental brief or any additional document in support of his opposition to SPD's Motion.

**DISCUSSION**

*A. Legal Standard for Motion for Summary Judgment*

Pursuant to Fed. R. Civ. P. 56 summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. C. P. 56(c)[1]. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999) (*quoting Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994); *Data Int'l. of N.C., L.L.C. v. STV, Inc.*, 159 F.Supp.2d 844 (E.D. Pa. 2001).

The moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all of the inferences to be drawn from the underlying facts must be viewed by the Court in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). To defeat a motion for summary judgment, the nonmoving party "must do more than simply

---

[1]Federal Rule Civil Procedure 56 is made applicable to these proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056.

4

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp,* 475 U.S.574, 586 (1986). Rather, it must present "significant probative evidence" that a genuine issue of fact exists. *Anderson,* 477 U.S. at 249. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no genuine issue of fact for trial and summary judgment is appropriate. *Matsushita,* 475 U.S. at 587; *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied,* 540 U.S. 811 (2003).

Here, neither party disputes the underlying facts. As a result, the only remaining issue is whether SPD is entitled to judgment "as a matter of law." *See In re Roller*, Civ. No. 05-0686, 2007 WL 128225, at *2 (N.D. Okla. Jan. 11, 2007) (summary judgment is not appropriate even if no opposing evidentiary matter is presented if moving party fails to demonstrate that it is entitled to judgment as a matter of law). SPD contends that it entitled to judgment because Nenner's negligence constitutes defalcation as a matter of law. Although Nenner admits that he acted negligently, Nenner asserts that summary judgment is inappropriate because SPD failed to prove that his actions constituted more than mere negligence. A ruling on the Motion requires the Court to consider the level of intent required to establish defalcation in § 523(a)(4) discharge litigation.

    **B.**    ***SPD's Burden Pursuant to 11 U.S.C. § 523(a)(4)***

Pursuant to § 523(a)(4), a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is excepted from discharge. 11 U.S.C. § 523(a)(4). To meet its burden pursuant to § 523(a)(4), SPD must prove that its claim arose from (1) conduct undertaken in Nenner's capacity as SPD's fiduciary in connection of an express trust; and (2) resulted from defalcation. *See In re Manzo*, 106 B.R. 69, 71 (Bankr. E.D. Pa. 1989). The standard of proof for each element differs. SPD must prove defalcation by a preponderance of the evidence whereas SPD must prove the existence of the express trust by "clear, precise and unambiguous evidence." *See In re Manzo*, 106 B.R. 69, 71 (Bankr. E.D. Pa. 1989); *see also In re Coley*, 433 B.R. 476, 487 (Bankr. E.D. Pa. 2010); *Graves v. James* (*In re James*), 94 B.R. 350, 352 (Bankr. E.D. Pa. 1988).

Here, Nenner does not dispute the existence of a fiduciary relationship in connection with an

5

express trust. Similarly, neither party disputes that Nenner negligently failed to properly account for SPD's funds entrusted to him. *See Graves v. James* (*In re James*), 94 B.R. 350, 353 (Bankr. E.D. Pa. 1988) ("Defalcation has been defined as the failure by a trustee to properly account for the funds entrusted to him."). What the parties do dispute is whether as a matter of law defalcation requires more than simple negligence. SPD urges this Court to follow the line of cases that hold "defalcation does not require proof of dishonest conduct, but may arise from negligence or ignorance." *Graves v. James (In re James)*, 94 B.R. 350, 352 (Bankr. E.D. Pa. 1988) (holding a claim arising from a fact pattern identical to the matter now before this Court to be nondischargeable pursuant to § 524(a)(4)). On the other hand, Nenner contends that as a matter of law, more than simple negligence is required to prove defalcation.

### 1. *The Standard for Proof of Defalcation*

Courts are split as to the level of intent required to prove defalcation pursuant to § 523(a)(4). Opinions range from requiring a fiduciary to have acted with simple negligence to requiring a fiduciary to have acted with extreme recklessness. *Compare Rwanda v. Uwimana* (*In re Uwimana*), 274 F.3d 806, 811 (4th Cir. 2001) ("negligence or even an innocent mistake which results in misappropriation or failure to account is sufficient."); *Tudor Oaks Limited Partnership v. Cochrane* (*In re Cochrane*), 124 F.3d 978 (8th Cir. 1997); *Lewis v. Scott* (*In re Lewis*), 97 F.3d 1182 (9th Cir. 1996) *with Schwager v. Fallas* (*Matter of Schwager*), 121 F.3d 177 (5th Cir. 1997) (requiring recklessness); *Patel v. Shamrock Floorcovering Services, Inc.* (*In re Patel*), 565 F.3d 963 (6th Cir. 2009) ("the debtor must have been objectively reckless in failing to properly account for or allocate funds"); *Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir. 1994) (requiring recklessness) *with In re Baylis*, 313 F.3d 9, 20 (1st Cir. 2002) ("a creditor must be able to show that a debtor's actions were so egregious that they come close to the level that would be required to prove fraud, embezzlement, or larceny"); *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 69 (2d Cir. 2007) ("The standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable."). Unfortunately, the Third Circuit has not addressed the issue. As a result, the courts of the Third Circuit serve as a microcosm of this debate.

The bankruptcy courts in the Eastern District apply a simple negligence standard while other courts of the Circuit have followed the standard set forth by the First and Second Circuits. *Compare In re Manzo*, 106 B.R. 69, 71 (Bankr. E.D. Pa. 1989); *Graves v. James* (*In re James*), 94 B.R. 350, 352-53 (Bankr. E.D. Pa. 1988) *with In re Tamis*, 398 B.R. 124, 130-31 (Bankr. D.N.J. 2008); *Chao v. Rizzi*, Civ. No. 06-711, 2007 WL 2317335 (W.D. Pa. Aug. 8, 2007); *In re Parks*, Bky. No. 05-37154, 2007 WL 2033380, at *16 (Bankr. D.N.J. Jul. 10, 2007) (stating "negligence alone is not sufficient to establish defalcation, and that some affirmative showing of misconduct, which is absent here, would be necessary").

As elaborated by Judge Twardoski in *Manzo*,

> "It is irrelevant whether the fiduciary engaged in wrongdoing or was negligent or ignorant of the misappropriation. Rather, in this context, defalcation includes any failure by a fiduciary to properly account for entrusted funds. Furthermore, there need not be a personal gain to the fiduciary."

*In re Manzo*, 106 B.R. 69, 72 (Bankr. E.D. Pa. 1989) (addressing claim resulting from debtor conduct as creditor's title insurance agent). Courts relying on a simple negligence standard reach this result by relying upon the definition of defalcation provided by Black's Law Dictionary - "Loosely, the failure to meet an obligation; a non-fraudulent default." Black's Law Dictionary 448 (8th ed. 2004).

Other courts of the Third Circuit that imposed a heightened standard of intent have relied on the Third Circuit's decision in *In re Schlessinger*, 208 Fed. Appx. 131 (3d Cir. 2006) to reach this result. In *Schlessinger*, the Third Circuit observed that the various exceptions to discharge provided by § 523(a) "are construed strictly against the objecting creditor." *In re Schlessinger*, 208 Fed. Appx. 131, 133 (3d Cir. 2006). Those courts applying a heightened standard are following the Third Circuit's instruction in *Schlessinger* by requiring a creditor prove more than simple negligence.

Also central to the analysis of courts applying a heightened standard is the Bankruptcy Code's fresh-start policy. As stated by the Bankruptcy Court for the District of New Jersey, "[t]his court agrees with both [the 1st Circuit] and [the 2nd Circuit] that an extreme recklessness standard for measuring defalcation is the standard most consistent with the long held view that exceptions to discharge should be

7

narrowly construed in favor of the Bankruptcy Code's 'fresh start' policy." *In re Tamis*, 398 B.R. 124, 130-31 (Bankr. D.N.J. 2008) (discussing various Circuit Court's attempts to define the mental state necessary for "defalcation"); *see also Chao v. Rizzi*, Civ. No. 06-711, 2007 WL 2317335 (W.D. Pa. Aug. 8, 2007); *In re Parks*, Bky. No. 05-37154, 2007 WL 2033380, at *16 (Bankr. D.N.J. Jul. 10, 2007). Then Bankruptcy Judge Ambrose relied on a similar rationale when he stated that "[d]efining 'defalcation' to include negligent or innocent conduct--particularly based solely on a single dictionary definition--would do violence to both the principle of narrow construction and the 'fresh start' policy, and lead to punitive and undesirable results." *Chao v. Rizzi*, Civ. No. 06-711, 2007 WL 2317335, at *3 (W.D. Pa. Aug. 8, 2007).

### 2.    *Nenner's Actions Constitute Defalcation*

Despite the parties' arguments, this Court need not decide whether mere negligence in the performance of a fiduciary duty constitutes defalcation. Here, the record demonstrates that the Debtor acted with more than mere negligence. In addition to misallocating SPD's premium payments, Nenner took affirmative action to frustrate SPD's ability to discover Nenner's wrongdoing. When SPD requested from the Debtor proof of insurance coverage, the Debtor forwarded to SPD a false certificate evidencing proof of the continuing coverage of the USUIC policy. At the time Nenner issued the certificate of liability insurance, the USUIC policy had been cancelled due to non-payment for more than four months. Not only did Nenner have reason to know the USUIC policy had been canceled, Nenner should have verified the existence of insurance coverage of liability insurance prior to issuing the certificate. In this Court's opinion, Nenner's issuance of the false certificate constitutes unreasonable conduct in disregard of a known or obvious risk and is evidence of reckless conduct. *See, e.g., In re Wong*, 207 B.R. 822, 831 (Bankr. E.D. Pa. 1997) (observing that "reckless conduct refers to unreasonable, affirmative conduct undertaken in disregard of a known or obvious risk from which it is highly probable that harm would follow. It is usually accompanied by a conscious indifference to the consequences. In contrast, negligence is characterized as mere thoughtlessness or inadvertence or simple inattention.") (citations omitted). Accordingly, even if this Court was to rely on a definition of defalcation that incorporates a

higher standard of intent than simple negligence, SPD would still be entitled to have its claim exempted from discharge.

**SUMMARY**

Based on the pleadings, there are no factual disputes and SPD is as a matter of law entitled to judgment entered in its favor. By recklessly failing to account for funds entrusted to him, Nenner breached his fiduciary obligations owed to SPD. The debts owed by Nenner to SPD are nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

An order consistent with this Opinion will be entered.

Dated: November 29, 2010

*Magdeline D. Coleman*
_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE